UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 25CR00637 |
| | ) | |
| JUAN ESPINOZA MARTINEZ | ) | |
| | ) | |

**DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT'S GANG EVIDENCE
AND EXPERT TESTIMONY**

Juan Espinoza Martinez, by and through his attorney, Bedi & Singer, LLP, requests

the Court preclude the government from presenting any gang evidence or expert

testimony pursuant to the First Amendment to the Constitution, Federal Rules of

Evidence 403 and 404(b), and Federal Rule of Procedure 16(a)(1)(G). In support, Mr.

Espinoza Martinez states the following:

**FACTS**

On October 5, 2025, the government filed a criminal complaint against Mr.

Espinoza Martinez for a single count under 18 U.S.C. § 1958(a). Dkt 1. The government's

entire case is based on the SOI's claims as described in the complaint. In its initial

complaint, the government claimed that Mr. Espinoza Martinez is a ranking member of

the Latin Kings. Dkt 1 at 3.

On October 6, 2025, the government released a statement linking Mr. Espinoza

Martinez to the Latin Kings and boasting of his arrest to the public.[1] The government's

---

[1] *See* United States Attorney's Office Northern District of Illinois, *Alleged Member of Chicago Street Gang Charged with Soliciting the Murder of Senior Law Enforcement Official Involved in "Operation Midway Blitz"* (Oct. 6, 2025),
https://www.justice.gov/usao-ndil/pr/alleged-member-chicago-street-gang-charged-soliciting-murder-senior-law-enforcement.

1

statement contains extremely inflammatory remarks like: "The arrest of this ruthless and violent member of the Latin Kings, a criminal organization notorious for its cruelty and disregard for the law, highlights the steadfast commitment of Homeland Security Investigations and our law enforcement partners to protect our communities and those who uphold justice." *Id.*

Mr. Espinoza Martinez's trial is set for January 20, 2026. Dkt 81. At the pretrial conference held on January 7, 2026, the government walked back its claims that Mr. Espinoza Martinez is a ranking member of the Latin Kings. Now, the government claims that Mr. Espinoza Martinez just has an "affinity" for the Latin Kings. Specifically, when asked what evidence the government intends to offer, the government pivots and claims, "rather than focusing on the term 'membership,' I do think the main point of the evidence here is the defendant's affinity to the Latin Kings." Pretrial Con. Tran. at 8-9. The government claimed that it was "not trying to make this case about gang membership." *Id.* at 17.

The Court excluded any evidence that Mr. Espinoza Martinez lives in Latin King territory, and any claims that any family member is a former Latin King. The Court reserved ruling on other gang evidence.

The same day, January 7, 2026, the government sent defense counsel a disclosure letter pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). See Gov. Disclosure Letter (Jan. 7, 2026). The letter stated that the government may call Lazaro Altamirano to "testify regarding Chicago criminal street gangs, operations, structures, territories, signifiers, and language with a particular focus on the Latin Kings." *Id.* at 1.

2

The government's disclosure letter first summarizes Altamirano's "experience and credentials." The government states that Altamirano has been the Commander of the 10th District of the Chicago Police Department since 2024, and the government summarily claims that he has "been a part of hundreds of investigations involving Chicago street gangs, including Little Village street gangs and the Latin Kings." *Id.* at 1. The government admits that Altamirano was "not involved in the investigation in this case," has no professional publications, and has only testified as an expert twice. *Id.* at 2. In a footnote, the government admits that Altmirano has not testified "specifically as a street gang expert in any of these cases." *Id.* at 2, fn 2.

The government's disclosure then provides "summary of anticipated testimony," stating that Altamirano may testify to: (i) "operation of street gangs in Little Village," "Latin King structure," "gang signifiers, and "code words." *Id.* at 2-3. The letter claims that Altamirano will testify that common words like "king" or "brother" are Latin King code words for other members.

Finally, the government's disclosure letter provides no basis for introducing its gang evidence. Following the government's most recent representations and filings, Mr. Espinoza Martinez moves to exclude all gang evidence in this case, including any expert testimony.

<u>ARGUMENT</u>

Mr. Espinoza Martinez requests the Court exclude the government from presenting any gang evidence or expert testimony about gangs at trial pursuant to the First Amendment to the United States Constitution, Federal Rules of Evidence 403 and

3

404(b), and Federal Rule of Procedure 16(a)(1)(G).

The First Amendment prevents the government from prosecuting Mr. Espinoza Martinez for mere association, even association with gang members. It also prevents the government from prosecuting Mr. Espinoza Martinez's freedom of expression, including any expression of displeasure or hatred towards the government and its officials. *See Buckley v. Valeo*, 424 U.S. 1, 25 (1976) ("The Court's decisions involving associational freedoms establish that the right of association is a 'basic constitutional freedom,' that is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.'") (internal citations omitted).

Federal Rules of Evidence 403 and 404(b) prevent the government from admitting prejudicial gang evidence against Mr. Espinoza Martinez to prove criminal propensity, guilt by association, or a verdict based on emotion. *See United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996). Defense counsel has found no case where the government properly admitted evidence about the *whole* city's criminal street gang problem against a defendant who was never a member of any street gang. *See United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008). Here, the government's proposed testimony against Mr. Espinoza Martinez "regarding Chicago criminal street gangs" is wholly irrelevant because his alleged "affinity" for gang members is nothing more than the criminal propensity used to prove guilt by mere association.

Finally, Federal Rule of Criminal 16(a)(1)(G) requires the government's disclosure letter to include: (1) a complete statement of all expert opinions; (2) the bases and reasons for them; (3) the expert's qualifications, including a list of all publications from

4

the last 10 years; and (4) a list of all other cases the witness has testified as an expert. Here, the government wants to call Altmirano "as a street gang expert."

However, Altmirano was not involved in this case's investigation; he has no professional publications, and he has never testified "specifically as a street gang expert." Most importantly, the government has stated no basis to admit his testimony.

Mr. Espinoza Martinez requests the Court preclude the government from introducing any gang evidence or witness testimony because: (A) admitting the government's highly inflammatory evidence "regarding Chicago criminal street gangs" is extremely prejudicial to Mr. Espinoza Martinez; (B); to admit gang evidence, the government must prove Mr. Espinoza Martinez is a gang member, and his gang membership in a "Chicago criminal street gang" is a critical link to proving the charged offense; (C) the government's claims that Mr. Espinoza Martinez has an "affinity" for gang members is not a proper basis for admission, and Chicago's entire gang culture cannot be used to prosecute Mr. Espinoza Martinez; and finally (D) the government's disclosure does not comply with Federal Rule 16(a)(1)(G), and Altmirano is not qualified to testify "as a street gang expert" in Mr. Espinoza Martinez's case.

### A. Admitting the government's highly inflammatory evidence "regarding Chicago criminal street gangs" is extremely prejudicial to Mr. Espinoza Martinez

Nearly every federal circuit has extensively warned district courts about the dangers of needlessly injecting gang evidence into federal trials. The Seventh Circuit has "recognized that gang membership has probative value under appropriate circumstances." *See United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990). However, it has demanded "careful consideration by district courts in determining the admissibility

5

of gang membership and gang activity evidence." *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996).

There is no question that evidence of a defendant's gang membership is prejudicial and inflammatory, "as it poses the risk that the jury will associate gang membership with a propensity for committing crimes and find the defendant guilty by association." *United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012). Evidence of gang membership taints a defendant in the eyes of a jury, and the Seventh Circuit has long recognized "the insidious quality of such evidence and the damage it can do." *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996). To put it lightly, "street gangs suffer from poor public relations." *Lewis*, 910 F.2d at 1372. "[A] jury is likely to associate gangs with 'criminal activity and deviant behavior,' such that the admission of gang evidence raises the specter of guilt by association or a verdict influenced by emotion." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011).

A gang's poor public relations are only worsened when the government presents "evidence that a gang is directly involved in illegal activities[,] exacerbat[ing] the potential for unfair prejudice." *United States v. Thomas*, 86 F.3d 647, 653, fn 1 (7th Cir. 1996). Consequently, courts only admit the "*mere* fact of a defendant's gang membership," not "a wide ranging inquiry into the generic criminality and violent dispositions of gangs and their members." *Street*, 548 F.3d at 632.

In this case, the government wants to introduce highly inflammatory and emotionally charged evidence about "Chicago criminal street gangs" through "a street gang expert." The government's proposed expert, Altmirano, has never testified

6

"specifically as a street gang expert in any of [his prior] cases." Id. at 2, fn 2. But in Mr. Espinoza Martinez's case, Altmirano plans to "testify regarding Chicago criminal street gangs, operations, structures, territories, signifiers, and language with a particular focus on the Latin Kings." *Id.*

Here, the government cannot needlessly introduce "generic criminality and violent dispositions of [Chicago] gangs and their members." *Street*, 548 F.3d at 632. If one street gang suffers from poor public relations, then introducing the whole culture of violence "regarding Chicago criminal street gangs" against Mr. Espinoza Martinez is astronomically prejudicial. Here, careful considerations show such evidence must be excluded at trial.

**B. To admit gang evidence, the government must prove Mr. Espinoza Martinez is a gang member, and his gang membership in a "Chicago criminal street gang" is a critical link to proving the charged offense under Rules 403 and 404(b)**

In recognition of the prejudicial nature of gang evidence, circuit courts "examine the care and thoroughness with which a district judge considered the admission or exclusion of gang-involvement evidence." *Santiago*, 643 F.3d at 1011. That examination involves two distinct findings: first, whether the defendant is a member of a gang; and second, whether the defendant's gang membership is highly probative of the government's case. *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996).

Below, Mr. Espinoza Martinez shows: (1) the Seventh Circuit has found that despite the defendants' shared gang membership, their gang membership was not highly probative of their charges; and (2) when the defendant is not a gang member, like Mr. Espinoza Martinez, extensive gang evidence is wholly irrelevant and highly prejudicial in

violation of Rule 403.

1. **The Seventh Circuit found that, despite the defendants' shared gang membership, their gang membership was not highly probative of their charges to warrant the admission of gang evidence**

In *United States v. Irvin*, the Seventh Circuit found that the district court abused its discretion by admitting the government's gang evidence under Rule 403. *Id.* at 866. The defendants were charged with possession with intent to distribute, and prior to trial, both moved to "exclude all testimony and references to the defendants' membership in a motorcycle gang or the gang's insignia." *Id.* at 861, 862. Over their objections, the district court admitted the gang evidence to prove a joint venture between the defendants. Specifically, the district court admitted the evidence because defendant "Irvin admitted that he was a member of the [motorcycle gang] Diablos," and defendant Pastor had "gang colors and tatoos (sic) and everything." *Id.* at 864. The district court erroneously concluded that the jury could find that defendant Pastor was a member of the gang "to establish that both [Irvin and Pastor] were involved in this conspiracy to possess and distribute the drugs." *Id.*

In rejecting this logic, the Seventh Circuit explained "that common membership in any group, whether it be a gang or a church group, makes it more likely that two people are involved in a given activity together, illegal or not." *Id.* However, that inference is certainly weak "if the group itself is not somehow connected to the activity at issue." *Id.* The Seventh Circuit explained "the fact that Irvin and Pastor are members of a motorcycle club is not especially probative of whether they jointly ventured to distribute drugs." *Id.* The Seventh Circuit found that the government "had no direct evidence that

8

the defendants were jointly transporting the drugs or were jointly intending to sell them." *Id.* at 864, 866. The court reasoned, the "highly charged gang-affiliation evidence served as a substitute for such direct evidence, increasing the chance of guilt purely by association." *Id.* at 866. The Seventh Circuit concluded: "we are missing that critical connection linking the motorcycle gang with drug trafficking, or any criminal activity for that matter." *Id.* at 864.

The same is true in Mr. Espinoza Martinez's case. There is no "critical connection linking" Chicago's criminal gangs with the charged crime against Mr. Espinoza Martinez. The government's generic, yet highly prejudicial, evidence regarding Chicago's street gangs cannot serve as a substitute for direct evidence against Mr. Espinoza Martinez.

2. **When the defendant is not a gang member, like Mr. Espinoza Martinez, generic gang evidence is irrelevant and highly prejudicial in violation of Rule 403**

Similarly, in *United States v. Street*, the Eighth Circuit found the district court abused its discretion by admitting gang evidence against a defendant who was not a gang member. 548 F.3d 618, 633 (8th Cir. 2008). The defendant in *Street* was charged with aiding and abetting murder in furtherance of a drug trafficking offense. *Id.* at 621. At trial, the government presented a gang expert who opined that the defendant was "'an associate, hang-around' of full gang members based on evidence that the defendant occasionally worked on motorcycles with two gang members, and they supplied the defendant with precursor chemicals for his drug manufacturing. *Id.* at 631.

"Based on nothing more than some association with several men who were current or former gang members, the prosecution introduced considerable evidence

9

tending to link Street to gangland culture." *Id.* at 632. Specifically, the expert provided "extensive, prejudicial testimony concerning the violent tendencies and criminal dispositions of gangs in general and of the [motorcycle gang] in particular," including "attitudes toward women, brutal hazing practices, outlaw tattoos and markings, and trafficking in stolen motorcycles." *Id.* at 631–32.

The Eighth Circuit found the admission of the government's gang evidence was erroneous, and the government's cited cases provided little support for its admission. First, the Eighth Circuit explained that the admission of gang evidence must concern "a defendant's *own* gang membership. In this case, Street was not nor ever had been a gang member." *Id.* at 632 (emphasis in original).

Second, the Eighth Circuit found the government could only present "the *mere* fact of a defendant's gang membership," it could not introduce "a wide ranging inquiry into the generic criminality and violent dispositions of gangs and their members." *Id.*

Finally, the Eighth Circuit explained evidence of "gang membership is allowed" only when it is "unavoidable" and connects the defendant to the charged conduct. *Id.* Ultimately, the Eighth Circuit rejected the government's use of gang evidence in *Street* because: "In none of these cases was gang membership used to show criminal propensity or otherwise paint a defendant guilty through mere association." *Id.*

C. **The government's claims that Mr. Espinoza Martinez has an "affinity" for gang members is not a proper basis for admission, and Chicago's entire "criminal street gang" culture cannot be used to prosecute Mr. Espinoza Martinez**

Here, the Court must exclude all the government's gang evidence because: (1) Mr. Espinoza Martinez's alleged "affinity" for the Latin Kings is not a proper basis for

10

admission; and (2) the government has failed to provide any basis for admission, let alone a critical connection linking the charges against Mr. Espinoza Martinez to all of "Chicago criminal street gangs."

### 1. Mr. Espinoza Martinez's alleged "affinity" for the Latin Kings is not a proper basis for admission

First, an "affinity" for gang members is completely different from "gang membership." An affinity for gang members can stem anywhere, including family relationships, professional experiences, community involvement, or even media exposure. *See Fonoifua v. Robertson*, No. 222CV4280PAKES, 2023 WL 4423603, at *28 (C.D. Cal. Apr. 25, 2023) ("Prospective Juror No. 2947 showed an affinity and sympathy to gang members based on the juror's statements that gang members attending her school had acted as her 'protectors' and that she had taught famous gang members."). Anyone can have an affinity for anything, including gang members or sports teams.[2]

The Seventh Circuit in *Irvin* explained "that common membership in any group, whether it be a gang or a church group, makes it more likely that two people are involved in a given activity together." 87 F.3d at 864. However, it cannot be fairly said that Mr. Espinoza Martinez's "affinity" alone makes it more likely that he was involved in any given activity with the Latin Kings. As the Eighth Circuit recognized in *Street*, the government can only introduce evidence of the defendant's *own* gang membership. In this case [Mr. Espinoza Martinez] was not nor ever had been a gang member." *See Street*, 548 F.3d at 632 (emphasis in original). Because the government has provided no case that

---

[2] For example, the undersigned counsel has an "affinity" for the Chicago Bears, lives in Chicago, and even wears Bear's colors, but alas, is not a member of the Chicago Bears.

permits the admission of gang evidence based on a defendant's so-called "affinity" for gang members, the Court must exclude all evidence of the Latin Kings.

### 2. The government failed to provide any basis, let alone a critical connection linking the charges against Mr. Espinoza Martinez to all of "Chicago criminal street gangs"

Second, the government has failed to show a critical connection between "Chicago's criminal street gangs" and the charges against Mr. Espinoza Martinez. The government's disclosure statement fails to provide any basis for its gang evidence. However, the government's prior statements show its evidence about "Chicago criminal street gangs" is only meant to associate Mr. Espinoza Martinez with gang violence generally. Specifically, it appears the government's theory of admissibility is that: (1) Mr. Espinoza Martinez has an "affinity" for the Latin Kings, (2) the Latin Kings are a violent street gang, and so, (3) it is more likely that Mr. Espinoza Martinez committed the charged crimes because of his "affinity" for violent street gangs.

Like in *Irvin* and *Street*, the government's gang evidence is only being "used to show criminal propensity or otherwise paint [Mr. Espinoza Martinez] guilty through mere association" with dangerous street gangs in Chicago. The Seventh and Eighth Circuits have already rejected this logic, finding it is "nothing more than some association with several men who were current or former gang members" in hopes of convicting Mr. Espinoza Martinez for his mere "affinity" "to gangland culture." *See Street*, 548 F.3d at 632.

Finally, just like the expert in *Street*, the government's expert in this case will do nothing more than present "prejudicial testimony concerning the violent tendencies and

12

criminal dispositions of gangs in general and of the [Latin Kings] in particular." *See id.* at 631–32. But in this case, just like in *Street*, Altmirano's "testimony is excessive, unduly prejudicial, and in great part completely irrelevant to the charged offenses." *See id.* at 633.

Admitting the government's extremely general, highly prejudicial, and mostly irrelevant gang evidence against Mr. Espinoza Martinez at trial is an abuse of discretion and reversible error. *See id.* This Court must exclude any such evidence under Rules 403 and 404(b).

D. **The government's disclosure letter does not comply with Federal Rule 16(a)(1)(G), and Altmirano is not qualified to testify "as a street gang expert" in this case**

Federal Rule of Criminal Procedure 16(a)(1) sets forth the government's disclosure rules and specifies the information that the government must disclose. Section (G)(iii) governs the "contents of the disclosure," demanding that "[t]he disclosure for each expert witness must contain:

> • a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

> • the bases and reasons for them;

> • the witness's qualifications, including a list of all publications authored in the previous 10 years; and

> • a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Here, the government failed to comply with the requirements of Rule 16(a)(1)(G)(iii). First, the government only provided Mr. Espinoza Martinez with some of Altmirano's conclusory and incriminating opinions regarding common terms like "kings" and "brothers." The letter also claims Altmirano will discuss street gang operations and structures, but the government fails to provide any details.

Second, the government has failed to state any basis or reasons for Altmirano's gang testimony. This requirement is arguably the most important information required to determine admissibility. The government's failure is a violation of Rule 16(a)(1)(G)(iii).

Third, Altmirano has no professional publications and is only relying on his "training and experience" to draw any and all of his expert conclusions in this case. He has no personal knowledge of Mr. Espinoza Martinez's investigation.

Finally, Altmirano has only testified as an expert witness twice, and neither time was "as a street gang expert." Still, the government plans to qualify Altmirano as a "street gang expert" to summarize the "violent tendencies and criminal dispositions of gangs in general and of the [Latin Kings] in particular." Altmirano is not qualified to draw these irrelevant and prejudicial conclusions, and the introduction of such generic, prejudicial testimony has already been rejected by the Federal Circuits.

Wherefore, Mr. Espinoza Martinez requests the Court exclude the government from presenting all gang evidence and gang expert testimony

> Respectfully Submitted,
> By: s/ Courtney L. Knippen
> Jonathan S. Bedi
> Dena M. Singer
> Courtney L. Knippen
> Bedi & Singer, LLP

14

53 West Jackson Blvd, Suite 1101
Chicago, IL 60604
Phone: (312) 525-2017
dsinger@bedisinger.com
jbedi@bedisinger.com
cknippen@bedisinger.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing document was filed via the Court's ECF system.

By: s/ Jonathan S. Bedi
Jonathan S. Bedi
Bedi & Singer, LLP
53 West Jackson Blvd, Suite 1101
Chicago, IL 60604
Phone: (312) 525-2017
jbedi@bedisinger.com
**Attorney for Defendant**

16