UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN ESPINOZA MARTINEZ | No. 25 CR 637<br><br>Honorable Joan H. Lefkow |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO EXCLUDE GOVERNMENT'S GANG EVIDENCE AND EXPERT
TESTIMONY**

The United States of America, by its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, respectfully responds to defendant's Motion to Exclude Government's Gang Evidence and Expert Testimony (Dkt. 89) as follows:

**I.  DEFENDANT'S MOTION TO EXCLUDE COMMANDER ALTAMIRANO SHOULD BE DENIED AS MOOT**

On December 12, 2025, the government filed a witness list that indicated it "MAY CALL" a "Witness to Testify on Chicago-area Gangs, Including the Latin Kings." Dkt. 71. On January 7, 2026, the government disclosed to the defense, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that it *may call* Commander Lazaro as a witness who will testify regarding "Chicago criminal street gang operations, structure, territories, signifiers, and language, with a particular focus on the Latin Kings."

The government does not intend to call Commander Lazaro as a witness, so the defendant's motion to exclude his testimony is moot. The government does not concede, however, as defendant contends, that its disclosure was deficient under Rule

16(a)(1)(G) or that Commander Lazaro was not qualified to provide opinion testimony on the matters disclosed.

Based on the government's disclosure, the defendant has baselessly concluded that any gang-related evidence must be to "needlessly introduce 'generic criminality and violent dispositions of [Chicago] gangs and their members." Dkt. 89 at 7. Not so. In this case, such evidence is neither needless nor generic. As explained further below, this characterization ignores how the evidence in this case, including defendant's *own* words, places his relationship to the Latin Kings at issue.

## II. NOTWITHSTANDING THE COURTS PRIOR RULINGS, THE DEFENDANT'S MOTION TO EXCLUDE GANG EVIDENCE SHOULD BE DENIED

On December 12, 2025, defendant filed Consolidated Motions *in limine* which included motions to exclude evidence that the defendant's house was in Latin King's territory (Defendant's MIL 6); (ii) defendant was a member of the Latin Kings (Defendant's MIL 7); (iii) defendant's family members were Latin Kings (Defendant's MIL 8), and (iv) that Latin Kings members contact SOI-1 after defendant's arrest (Defendant's MIL 9). Dkt. 75. The Court granted Defendant's MILS 6 and 7, reserved ruling on Defendant's MIL 8, and granted Defendant's MIL 9 as unopposed. Dkt. 83.

The government incorporates by reference Section III of its Response to Defendant's Consolidated Motions *in Limine*. Dkt. 79 at 6-10. As noted therein, and argued at the pretrial conference in this matter, evidence of the defendant's relationship to the Latin Kings is relevant to a central issue in this case: defendant's intent when referencing the Latin Kings *in connection with* his *own* dissemination of details about a murder-for-hire. Accordingly, evidence concerning what defendant

2

told law enforcement agents about his relationship to the Latin Kings and that defendant portrayed himself to SOI-1 to be a member of the Latin Kings is relevant and should be admitted at trial.

In his motion, defendant argues that the government is both *required* to prove that the defendant is a gang member in order for gang evidence to be relevant (no such requirement exists), Dkt. 89 at 7, while also simultaneously arguing that gang membership is irrelevant (and therefore should be excluded) under Rule 401 because it is not an element of the offense, Dkt. 76 at 6. This circular reasoning underscores that the defendant's focus on Latin King membership is collateral to the real reason why the defendant's relationship to Latin Kings is relevant: the defendant's intent when sending the details related to the murder-for-hire plot. Evidence of that relationship, for example, corroborates that the Latin Kings actually provided the defendant with this information and that it was a real murder-for-hire plot (as opposed to something that the defendant invented).

Again, defendant ignores how his own words about the Latin Kings relate to the charged conduct. This starts with the defendant telling SOI-1 "LK [emojis] on him" in relation to the $10,000 reward for killing Mr. Bovino. The government anticipates introducing evidence that the defendant continued the message thread with SOI-1, sending videos and photographs aiming to persuade SOI-1 that he had "rank" in the Latin Kings. More specifically, the defendant continued the message thread by transmitting a screenshot of a conversation with another user, followed by

3

the words "cuando temenos rank," which translates to "when we have rank."[1] During the defendant's post-arrest interview, the defendant was asked about this same conversation, which agents found on defendant's phone. 101-4 TR at 1-9.[2] Defendant acknowledged that the user was a "Drake 27," in reference a sect of the Latin Kings. *Id.*

The jury can readily infer that the defendant sent this information to SOI-1 as evidence of his position with the Latin Kings, which doubles-down on the information he transmitted earlier regarding the murder-for-hire. This is just one example where the defendant, in his own words, not through attenuated, generalized evidence, espouses his standing with the Latin Kings in direct relation to the charged conduct. Here, the probative value of gang affiliation goes to the defendant's intent when sending the murder solicitation. He is using that affiliation to try and convince SOI-1 of the information's veracity. This distinguishes this case from the cases that defendant cites to support the exclusion of gang evidence. In those cases, unlike this case, the "critical linking connection" the respective gang and the charged conduct was missing. *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996) ("the fact that co-defendants are members of a motorcycle club is not especially probative of whether they jointly ventured to distribute drugs, unless the motorcycle club is shown to be involved with drugs."). In *United States v. St.,* 548 F.3d 618 (8th Cir. 2008), the Eight

---

[1] This is a draft Spanish-English translation and not final.
[2] The government cites to draft, not final, transcripts of the post-arrest interview tendered to the Court on January 13, 2026.

4


Circuit held that the district court abused its discretion by allowing far-afield testimony that is not contemplated in the governments case.

> *The net effect of Cook's testimony was to locate El Forasteros within a tradition of misogynistic, hardened outlaws, but the relevance of this testimony was not established. Cook testified to incidents of violence from as long ago as 1947 and from as far afield as Las Vegas, Nevada, and Hollister, California. He described arcane insignia and painful tattoos intended to set gang members apart from the rest of civilized society. He recounted nauseous and brutal initiation procedures. He made repeated references to shootings, assaults, and theft. He explained the general contempt gang members displayed towards women. None of this was tied to the actual crimes with which [defendant] was charged or the particular facts of his case.*

*Id.* at 631. To this case, those cases share little similarity. In this case the "critical linking connection" between the charged conduct and the Latin Kings is plainly established by defendant's own words describing the Latin Kings as the organization offering the reward for murder.

Defendant's statements in his post-arrest interview, in which he is answering questions about the charges in this case, also demonstrate how his relationship to the Latin Kings is relevant to the charged conduct. During the post-arrest interview, when agents asked defendant about the message to SOI-1, and specifically what "LK" means, defendant stated "I said Latin Kings are on him. That's what I said." 101-2 TR at 1084-1096. When asked, "how would you know that," the defendant responded "Because I hear the talks. I mean, they are talking right there." *Id.* at 1100-1101. This is evidence that defendant had relationships with Latin Kings members, such that he could be physically within earshot of discussions regarding the murder-for-hire plot. As another example, the defendant demonstrated that he was familiar with gang structure and in-fighting. Defendant explained to the agents, "there is not one

5

Inca[3] … There's four or five." *Id.* at 2463-2464. Defendant further explained, "And they're fighting between each other right now." *Id.* at 2473-74. He explained even further, "one of the Incas got shot by Boulevards right there." *Id.* at 2473-2474. Defendant's familiarity with such information corroborates that he is aware of other current events, or occurrences related to street gangs close in time to the charged conduct. This speaks directly to whether the defendant had the kind affiliation to the Latin Kings such that he would possess credible information regarding a murder-for-hire offered by the Latin Kings.

In addition, the government anticipates that SOI-1 may testify, based on his conversations, interactions, and observations of the defendant (including the Snapchat messages described above, where the defendant references the Latin Kings and espouses his rank), that SOI-1 *believed* defendant was a Latin King. And that belief, the jury could infer, was informed by the defendant's own efforts to convince SOI-1 the information was true vis-à-vis his representations about his standing with those offering the reward.

Alternatively, the finder of fact could determine, like SOI-1, that based on the totality of the evidence (both proving and disproving membership) that the defendant was actually a member of the Latin Kings. The evidence should not foreclose that inference if it aids the jury in determining what defendant's intent was when disseminating the murder-solicitation.

---

[3] A term for a leader in the Latin Kings.

In this case, the defendant's own statements referencing the Latin Kings, which are in lockstep with the charged murder-solicitation, are relevant evidence. Defendant's relationship with the Latin Kings, based on his own words and actions, corroborates where the murder-for-hire information came from and speaks to the defendant's intent when sending that information. This is highly relevant non-propensity evidence that is direct evidence of the charged offense.

## CONCLUSION

For the reasons stated above, the government respectfully requests the Court deny defendant's Motion Government's to Exclude Gang Evidence and Expert Testimony.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: *s/Jason Yonan*
Minje Shin
Jason Yonan
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300